UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| HP TUNERS, LLC, a Nevada limited liability company, | ) ) ) | CASE NO.   1:18-cv-2070 |
| Plaintiff, | ) ) ) | **COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES** |
| vs. | ) ) | |
| MATTHEW HUSSEY, STACY HUSSEY, and PRO MASTER AUTOMOTIVE, INC., an Alabama corporation, | ) ) ) ) | |
| Defendants. | ) | |

Plaintiff HP TUNERS, LLC, a Nevada limited liability company ("HPT"), by its attorneys, for its Complaint for Injunctive Relief and Damages ("Complaint") against Defendants MATTHEW HUSSEY, STACY HUSSEY, and PRO MASTER AUTOMOTIVE, INC., an Alabama corporation ("PRO MASTER") (collectively, "Defendants").  In support thereof, HPT states as follows:

## NATURE OF THE ACTION

1.      At substantial expense, hard work and ingenuity over the course of many years and thousands of man hours, HPT has developed complete, cost effective tuning and data acquisition solutions for automobile enthusiasts and professional shops.

2.      Over the years, HPT has carefully guarded its proprietary products and source code in order to protect its trade secrets, specifications and software.

3.      A fundamental component of HPT's business is the sale and distribution of credits via application keys, which are the license mechanism used by customers to tune vehicles.  Only HPT is authorized to generate authentic application keys for use with HPT's products.  However,

1

Defendants have misappropriated HPT's trade secrets and proprietary information and have knowingly generated, created, used and/or obtained fraudulent application keys that were not generated by HPT.

4.     This is an action against Defendants for: (i) violation of the Computer Fraud and Abuse Act ("CFAA") arising under 18 U.S.C. §1030; (ii) violation of the Defend Trade Secrets Act ("DTSA"), 18 U.S.C. §1836 et seq.; (iii) misappropriation of trade secrets arising under the Alabama Trade Secrets Act, AL Code Sec. 8-27-1 et seq.; (iv) violation of the Illinois Trade Secrets Act, 765 ILCS 1065/1 et. seq.; (v) unfair competition under the Alabama Deceptive Trade Practices Act, AL Code Sec. 8-19-1 et seq.; (vi) unfair competition under the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1 et. seq.; and (vii) breach of contract.

## PARTIES

5.     HPT is a Nevada limited liability company with its principal place of business in Buffalo Grove, Illinois.

6.     MATTHEW HUSSEY and STACY HUSSEY are residents of the State of Alabama.

7.     PRO MASTER is an Alabama corporation with its principal place of business at 166 County Road 623, Enterprise, Alabama.  MATTHEW HUSSEY and STACY HUSSEY are is the principal of PRO MASTER.

## JURISDICTION AND VENUE

8.     This Court has subject matter jurisdiction for the CFAA and DTSA claims pursuant to 28 U.S.C. §1331.  This Court has supplemental jurisdiction for the state law claims pursuant to 28 U.S.C. §1367.

9.      This Court also has jurisdiction over the parties and subject matter in this civil action pursuant to 28 U.S.C. § 1332(a) in that the parties are citizens of different states and that the matter in controversy exceeds the sum of $75,000, exclusive of interests and costs.

10.      Venue is proper in this judicial district pursuant to the forum selection provision contained in the End User License Agreement ("EULA") between the parties.

## BACKGROUND FACTS

11.      HPT is a niche business, which provides complete, cost effective automotive tuning and data acquisition solutions for enthusiasts and professional shops.

12.      HPT's business includes but is not limited to computer hardware and software designed for use in custom and/or pre-programmed engine and transmission tuning and calibration applications for automobiles, trucks and other types of vehicles (including but not limited to ATVs, snowmobiles and watercraft) (the "HP Tuners Business").

13.      HPT has expended significant time, money and resources to develop the HP Tuners Business, and HPT has created methods of business, strategies, programs and technologies which did not exist in the industry prior to HPT's development of the HP Tuners Business.

14.      HPT conducts business nationwide. Over the years, HPT has invested a great deal of time and money in developing its proprietary products and source code, and in building and growing the HP Tuners Business.

15.      In order for HPT to gain a competitive advantage in the industry, it has cultivated, nurtured and maintained an extensive network of vendors, resellers and customers to which HPT provides its products and offerings.   HPT's network of vendors, resellers and

customers is expansive and relies on HPT to ensure that only authorized, authentic products and offerings are available in the marketplace.

16.     HPT invests a substantial amount of money and other resources in developing and maintaining its network of vendors, reseller and customers.

17.     HPT prides itself in catering to the needs of its vendors, resellers and customers and providing authorized, authentic and functional products and offerings, and the most competitive pricing in the industry.

18.     HPT works diligently to create new products and offerings and to quickly and adeptly match its vendors, resellers and customers' needs and requests.

19.     HPT is constantly working to develop its products, source code and offerings, and has devoted substantial time, money and resources to protect its confidential and proprietary information, and to avoid efforts by third parties to pirate HPT's products and offerings.

20.     As a result of HPT's reputation, exceptional service, and diligent development of products and offerings, HPT has developed long-standing relationships with many of its vendors, resellers and customers.

21.     HPT's confidential and proprietary software, source code, application key generator and offerings have been developed and extensively refined by HPT at a substantial cost and effort and constitute confidential information and valuable trade secrets of HPT (collectively, the "Confidential Information").

22.     HPT derives economic value from the fact that its Confidential Information is not known outside of HPT's business and is not available through any public records and information sources. HPT's Confidential Information cannot be independently developed by its competitors without great effort and expense.

4

23.     Recognizing the economic value that it derives from its Confidential Information, as well as the potential value of this information to its competitors, HPT requires that its Confidential Information be kept strictly confidential by its employees and restricts access to this information. HPT has taken substantial steps and security measures to protect the confidentiality of its Confidential Information, including but not limited to the following:

a)      HPT protects access to Confidential Information through computer passwords.

b)      HPT protects to its Confidential Information through hard drive encryption on all employee's computers.

c)      HPT protects access to its Confidential Information through sophisticated firewalls.

d)      HPT protects distribution of Confidential Information through non-compete and non-disclosure agreements.

e)      HPT limits the number of employees having access to its Confidential Information.

f)      Employees are given access to HPT's Confidential Information on a "need to know" basis.

g)      HPT does not give access to its Confidential Information to non-employees.

h)      HPT employees are forbidden from copying, transferring or otherwise duplicating any of HPT's Confidential Information.

i)      HPT requires each employee to return to HPT all Confidential Information

5

when the employee leaves HPT's employ.

24.    Furthermore, HPT undertook reasonable measures to maintain the secrecy of its proprietary products, source code, software and offerings, including but not limited to entering into licensing agreements with protective clauses and installing security measures to prevent others from obtaining access and pirating HPT's confidential and proprietary products, source code, software, offerings, interfaces and application keys.

25.    As a core function of the HPT Business, HPT sells Interfaces which connect to the onboard computer of a vehicle.

26.    In connection with the Interfaces, as another core function of the HPT Business, HPT sells credits and distributes them via application keys, which are the license mechanism used by customers to tune vehicles.  HPT credits are generally sold for approximately $50.00 USD and only HPT has the ability and authority to generate authentic application keys.

27.    Defendants have used two (2) HPT Interfaces in connection with the services they are performing for themselves or customers, one of which is, upon information and belief, a fraudulent, cloned Interface.

28.    The two (2) HPT Interfaces are serial numbers:

      (i)      1282218605 – the fraudulent, cloned Interface

      (ii)     1389133705 – this is an Interface which is not registered by HPT

29.    While Interface 1282218605 should have 28 GM, 0 Ford and 2 Dodge credits, in connection with this Interface, Defendants have used 214 GM, 2 Ford and 8 Dodge credits with a fraudulent application key that they wrongfully created or obtained.  Moreover, Defendants are using an application key on Interface 1282218605 showing 602 GM, 192 Ford and 136 Dodge

credits that they wrongfully created or obtained which was not generated by or purchased from HPT

30.     Interface 1389133705 is not registered by HPT.  In connection with this Interface, Defendants are using an application key on Interface 1389133705 showing 912 GM, 960 Ford and 944 Dodge credits that they wrongfully created or obtained which was not generated by or purchased from HPT.

31.     The value of the fraudulent HPT credits wrongfully obtained and possessed by Defendants exceeds $185,000.00.

32.     In connection with the HPT Interfaces issued to Defendants and Defendants' use of HPT's software, Defendants entered into a EULA with HPT.  (A copy of the EULA is attached hereto as Exhibit A).

33.     The EULA provided, in pertinent part:

3.     **Limitations and Obligations**

a.     **Restrictions on Use**.

Licensee shall not:

(i)     make the Licensed System or accompanying materials available to, or use the Licensed System for the benefit of, anyone other than Licensee except expressly permitted in this EULA;

(ii)     market, sell, distribute, sublicense, use, modify, translate, reproduce, create derivative works from, dispose of, rent, lease, or authorize or permit access or use of any portion of the Licensed System, except as expressly permitted in this EULA, without the expressed written consent of HP Tuners LLC;

(iii)     reverse engineer, decompile, or disassemble the Licensed System, except and only to the extent that such activity is expressly permitted by applicable law notwithstanding this limitation;

(iv)     interfere with or disrupt the integrity or performance of the Licensed System;

(v)     copy the Licensed System or any part, feature, function thereof;

(vi)     export or use the Licensed System in violation of U.S. law, including Department of Commerce export administration regulations;

(vii)     remove any copyright and other proprietary notices contained in the Licensed System;

(viii)     use the Licensed System in a manner which infringes or violates any of the intellectual property, proprietary, or other rights of HP Tuners LLC or any third party;

(ix)     distribute or transfer the installer of the Licensed System, any files installed by the installer of the Licensed System, or any files contained within the installer of the Licensed System; or

(x)     access and use the Licensed System in any manner that is inconsistent with the terms of this EULA.

b.     **Additional Obligations.**

(i)     Licensee shall comply in full with all federal, state, local and foreign laws, rules and regulations in connection with its access to, and use of, the Licensed System.

(ii)     The Licensed System may be accessed and used only in a form and manner approved by HP Tuners LLC in its sole discretion, and only in accordance with the terms and conditions of this EULA.

(iii)     Licensee shall not remove HP Tuners LLC's copyright notices and other proprietary notices on the Licensed System, and all copies thereof shall be subject to all terms, conditions, and obligations of this EULA.

(See Exhibit A).

34.    The EULA further provides, in pertinent part, that "Jurisdiction and venue for all actions arising under this EULA shall be in the federal and state courts located in the State of Illinois." (See Exhibit A, Section 13).

35.    Defendants' generation and/or use of fraudulent application keys to obtain credits without purchasing them from HPT constitutes a violation of the terms and provisions of the EULA, otherwise infringes upon HPT intellectual property rights and constitutes a misappropriation of HPT's confidential and proprietary information.

36.    Defendants have knowingly and wrongfully acquired, possess and are using fraudulent application keys to generate licenses, tune vehicles and generate revenues for their own benefit or the benefit of others.

37.    Defendants' misconduct includes adding extra licenses to existing interfaces using fraudulent application keys, which were not generated by HPT.

**COUNT I**

**<u>VIOLATION OF COMPUTER FRAUD AND ABUSE ACT, 18 U.S.C. §1030</u>**

38.    HPT repeats and realleges ¶¶ 1 through 37 of the Complaint as if fully set forth herein.

39.    Defendants, knowingly and with intent to defraud, wrongfully accessed, trespassed, engineered and/or hacked HPT's software, systems and source code to create, generate and use fraudulent application keys and licenses.

40.    HPT's business, computers, software, systems and source code are used in, and affect, interstate commerce.

41.    Moreover, in doing so, Defendants intended to and succeeded in obtaining something of value in excess of $5,000 per year (as required by the CFAA).

9

42. Through fraudulent activity, Defendants have generated profits and obtained revenues that otherwise would have gone to HPT.

43. Defendants' activities described hereinabove constitute a violation of the CFAA, 18 U.S.C. §1030(a)(4).

44. Plaintiff, HPT, may maintain a civil action against Defendants for violations of the CFAA pursuant to 18 U.S.C. §1030(g).

45. HPT is entitled to compensatory damages, injunctive relief and other equitable relief.

46. As a direct and proximate result of Defendants' ongoing violations and the misconduct alleged herein, HPT has suffered, and will continue to suffer substantial injuries, loss and damage to its business and goodwill in an amount to be proven at trial.

47. If Defendants are permitted to continue their conduct, HPT will be irreparably harmed. HPT has been and continues to be damaged in an amount to be proven at trial and also in a manner and amount that cannot be fully measured or compensated in economic terms. Such irreparable damage will continue unless Defendants' conduct is enjoined during the pendency of this action and thereafter.

## COUNT II

### VIOLATION OF THE DEFEND THE TRADE SECRETS ACT, 18 U.S.C. § 1836

48. HPT repeats and realleges ¶¶ 1 through 37 of the Complaint as if fully set forth herein.

49. HPT owned and possessed confidential and proprietary documents and data containing trade secrets, including but not limited to source code.

50.     Without authorization by HPT, upon information and belief, Defendants have unlawfully obtained access to confidential and proprietary information of HPT.

51.     The confidential and proprietary information of HPT wrongfully obtained and possessed by Defendants gives Defendants, and those active in concert with them, the ability to create, generate and/or use fraudulent application keys and licenses for use with HPT's Interfaces and software.  This allows Defendants to gain profit from tuning vehicles without purchasing genuine licenses from HPT.

52.     HPT's confidential and proprietary source code has never been accessible to the public.

53.     HPT has taken various reasonable measures to ensure that its source code remains confidential and proprietary, and to prevent misappropriation of its confidential and proprietary trade secrets, including its source code.

54.     HPT's trade secrets derive independent economic value, both actual and potential, from not being generally known to other persons, businesses, or the public, who could obtain economic value from their disclosure or use.

55.     In violation of law, Defendants have misappropriated HPT's trade secrets by creating, generating and/or using fraudulent application keys to generate licenses and obtain "free" credits.

56.     Such use of HPT's confidential and proprietary trade secret information constitutes misappropriation under the DTSA.

57.     As a direct and proximate result of Defendants' ongoing violations and the misconduct alleged herein, HPT has suffered, and will continue to suffer substantial injuries, loss and damage to its business and goodwill in an amount to be proven at trial.

11

58.     If Defendants are permitted to continue their conduct, HPT will be irreparably harmed. HPT has been and continues to be damaged in an amount to be proven at trial and also in a manner and amount that cannot be fully measured or compensated in economic terms. Such irreparable damage will continue unless Defendants' conduct is enjoined during the pendency of this action and thereafter.

## COUNT III

### VIOLATION OF THE ALABAMA TRADE SECRETS ACT, AL CODE SEC. 8-27-1 ET SEQ.

59.     HPT repeats and realleges ¶¶ 1 through 37 of the Complaint as if fully set forth herein.

60.     HPT owned and possessed confidential and proprietary documents and data containing trade secrets, including but not limited to source code.

61.     Without authorization by HPT, upon information and belief, Defendants have unlawfully obtained access to confidential and proprietary information of HPT.

62.     The confidential and proprietary information of HPT wrongfully obtained and possessed by Defendants gives Defendants, and those active in concert with them, the ability to create, generate and/or use fraudulent application keys and licenses for use with HPT's Interfaces and software. This allows Defendants to gain profit from tuning vehicles without purchasing genuine licenses from HPT.

63.     HPT's confidential and proprietary source code has never been accessible to the public.

64.     HPT has taken various reasonable measures to ensure that its source code remains confidential and proprietary, and to prevent misappropriation of its confidential and proprietary trade secrets, including its source code.

65.    HPT's trade secrets derive independent economic value, both actual and potential, from not being generally known to other persons, businesses, or the public, who could obtain economic value from their disclosure or use.

66.    In violation of law, Defendants have misappropriated HPT's trade secrets by creating, generating and using fraudulent application keys to generate licenses and/or obtain "free" credits.

67.    Such use of HPT's confidential and proprietary trade secret information constitutes misappropriation under the Alabama Trade Secrets Act, AL Code Sec. 8-27-1 et seq.

68.    As a direct and proximate result of Defendants' ongoing violations and the misconduct alleged herein, HPT has suffered, and will continue to suffer substantial injuries, loss and damage to its business and goodwill in an amount to be proven at trial.

69.    If Defendants are permitted to continue their misconduct, HPT will be irreparably harmed.  HPT has been and continues to be damaged in an amount to be proven at trial and also in a manner and amount that cannot be fully measured or compensated in economic terms.  Such irreparable damage will continue unless Defendants' conduct is enjoined during the pendency of this action and thereafter.

## COUNT IV

## VIOLATION OF THE ILLINOIS TRADE SECRETS ACT, 765 ILCS 1065/1, ET. SEQ.

70.    HPT repeats and realleges ¶¶ 1 through 37 of the Complaint as if fully set forth herein.

71.    HPT owned and possessed confidential and proprietary documents and data containing trade secrets, including but not limited to source code.

72.     Without authorization by HPT, upon information and belief, Defendants have unlawfully obtained access to confidential and proprietary information of HPT.

73.     The confidential and proprietary information of HPT wrongfully obtained and possessed by Defendants gives Defendants, and those active in concert with them, the ability to create, generate and/or use fraudulent application keys and licenses for use with HPT's Interfaces and software.  This allows Defendants to gain profit from tuning vehicles without purchasing genuine licenses from HPT.

74.     HPT's confidential and proprietary source code has never been accessible to the public.

75.     HPT has taken various reasonable measures to ensure that its source code remains confidential and proprietary, and to prevent misappropriation of its confidential and proprietary trade secrets, including its source code.

76.     HPT's trade secrets derive independent economic value, both actual and potential, from not being generally known to other persons, businesses, or the public, who could obtain economic value from their disclosure or use.

77.     In violation of law, Defendants have misappropriated HPT's trade secrets by creating, generating and using fraudulent application keys to generate licenses and/or obtain "free" credits.

78.     Such use of HPT's confidential and proprietary trade secret information constitutes misappropriation under the Illinois Trade Secrets Act.

79.     As a direct and proximate result of Defendants' ongoing violations and the misconduct alleged herein, HPT has suffered, and will continue to suffer substantial injuries, loss and damage to its business and goodwill in an amount to be proven at trial.

14

80.     If Defendants are permitted to continue their conduct, HPT will be irreparably harmed.  HPT has been and continues to be damaged in an amount to be proven at trial and also in a manner and amount that cannot be fully measured or compensated in economic terms.  Such irreparable damage will continue unless Defendants' conduct is enjoined during the pendency of this action and thereafter.

**COUNT V**

**UNFAIR COMPETITION UNDER THE**

**ALABAMA DECEPTIVE TRADE PRACTICES ACT, AL CODE SEC. 8-19-1 ET SEQ.**

81.     HPT repeats and realleges ¶¶ 1 through 37 of the Complaint as if fully set forth herein.

82.     Through the acts described hereinabove, Defendants have engaged in unfair practices in violation of the public interest by misappropriating the trade secrets of HPT.

83.     Specifically, the Defendants are deceiving the public by passing off HPT credits and license keys as authentic products and offerings of HPT when, in fact, they are not.

84.     Defendants' misconduct, as described hereinabove, affects the public interest.

85.     HPT's interests have been injured in numerous ways as a result of Defendants' unfair and deceptive acts and practices.

86.     But for Defendants' unfair and deceptive practices, HPT would not have suffered these injuries.

## COUNT VI

## UNFAIR COMPETITION UNDER THE ILLINOIS CONSUMER FRAUD AND

## DECEPTIVE BUSINESS PRACTICES ACT, 815 ILCS 505/1 ET. SEQ.

87.     HPT repeats and realleges ¶¶ 1 through 37 of the Complaint as if fully set forth herein.

88.     Through the acts described hereinabove, Defendants have engaged in unfair practices in violation of the public interest by misappropriating the trade secrets of HPT.

89.     Specifically, the Defendants are deceiving the public by passing off HPT credits and license keys as authentic products and offerings of HPT when, in fact, they are not.

90.     Defendants' misconduct, as described hereinabove, affects the public interest.

91.     HPT's interests have been injured in numerous ways as a result of Defendants' unfair and deceptive acts and practices.

92.     But for Defendants' unfair and deceptive practices, HPT would not have suffered these injuries.

## COUNT VII

## BREACH OF CONTRACT

93.     HPT repeats and realleges ¶¶ 1 through 37 of the Complaint as if fully set forth herein.

94.     In connection with Defendants' use of HPT's software, Defendants entered into the EULA with HPT.

95.     The EULA is a valid and enforceable contract.

96.     HPT fully performed its obligations under the EULA.

97. By virtue of Defendants' misconduct as set forth hereinabove, Defendants have breached his obligations under the EULA.

98. Defendants' misconduct constitutes a material breach of the EULA.

99. As a direct and proximate result of Defendants' ongoing violations and the misconduct alleged herein, HPT has suffered, and will continue to suffer substantial injuries, loss and damages in an amount to be proven at trial.

## PRAYER FOR RELIEF

**WHEREFORE,** HPT respectfully prays for judgment against Defendants, MATTHEW HUSSEY, STACY HUSSEY, and PRO MASTER AUTOMOTIVE, INC., an Alabama corporation, and in favor of HP Tuners, LLC as follows:

1. Awarding and ordering an accounting and disgorgement of all Defendants' profits and/or damages suffered by Plaintiff due to Defendants' misappropriation of the HPT's confidential and proprietary trade secrets pursuant to:

    a. the Computer Fraud and Abuse Act, 18 U.S.C. §1030;

    b. the Defend Trade Secrets Act, 18 U.S.C. §1836 et seq.;

    c. the Alabama Trade Secrets Act, AL Code Sec. 8-27-1 et seq.; and

    d. the Illinois Trade Secrets Act, 765 ILCS 1065/1 et. seq.

2. Awarding Plaintiff exemplary damages as authorized by statute for Defendants' willful misappropriation.

3. Enjoining Defendants from using misappropriated trade secrets pursuant to statute.

4. Entry of a declaratory judgment that Defendants' conduct was a violation of the Computer Fraud and Abuse Act, 18 U.S.C. 1030 (a)(4).

5.      Enjoining Defendants from accessing HPT's Protected Computers.

6.      Awarding such other and further relief as may be just and proper caused by Defendants' violation of the Computer Fraud and Abuse Act, 18 U.S.C. 1030 (a)(4).

7.      Awarding HPT compensatory damages, in an amount to be proven at trial.

8.      Awarding HPT punitive and exemplary damages as a result of Defendants' misconduct.

9.      Awarding pre- and post-judgment interest to HPT.

10.     Awarding HPT a preliminary and permanent injunction enjoining Defendants, their agents, servants and employees, and those people in active concert or participation with them from:

        a.  Passing off any of their products or services as those of HPT;

        b.  Causing a likelihood of confusion or misunderstanding as to the source or sponsorship of Defendants' businesses, products or services;

        c.  Causing a likelihood of confusion or misunderstanding as to their affiliation, connection or association with HPT or any of HPT products or services; and

        d.  Unfairly competing with HPT in any manner.

11.     An award of damages in an amount to be proven at trial based on Defendants' unfair competition.

12.     An award of damages in an amount to be proven at trial based on Defendants' breach of contract.

13.     An award of damages in an amount to be proven at trial based on Defendants' tortious interference with HPT's prospective contractual or economic relations.

14. An order that Defendants be required to file with the Court and to serve upon HPT counsel within ten (10) days after entry of any injunction or order issued herein, a written report, under oath, setting forth in detail the manner in which they have complied with such injunction or order.

15. An award of the costs and expenses, including reasonable attorney's fees, incurred by HPT in connection with this action as provided for by statute.

16. An award of such other and further relief as the Court deems just and proper.

Dated this 21th day of March, 2018          Respectfully submitted,


                                                    _____*s/ Andrew P. Bleiman*_____
                                                    Attorneys for HP Tuners, LLC

Andrew P. Bleiman, ARDC 6255640
Marks & Klein
1363 Shermer Road, Suite 318
Northbrook, Illinois 60062
(312) 206-5162
andrew@marksklein.com

## **VERIFICATION**

I, KEITH PROCIUK, as Member of HP TUNERS, LLC, declare under penalty of perjury under the laws of the United States of America that I have read and reviewed the allegations contained in the foregoing Complaint for Injunctive Relief and Damages, that I have knowledge pertaining to the allegations set forth in the foregoing document, and that those allegations are true and correct to the best of my knowledge and belief. Executed on March 21, 2018.

HP TUNERS, LLC

KEITH PROCIUK, Member

20